UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Timothy Triplett,   Case No. 3:14-cv-0819

    Plaintiff

v.   MEMORANDUM OPINION
AND ORDER

Edward Sheldon, et al.,

    Defendants

*Pro se* Plaintiff Timothy Triplett filed this action under 42 U.S.C. § 1983 against Toledo Correctional Institution Warden Edward Sheldon, Deputy Warden Jodi Factor, Major G. Parker, Institutional Inspector S. Brown, Shift Captain Mr. Matthias, Lieutenant Moye, Corrections Officer Midrid, Corrections Officer Danhoff, Corrections Officer Reed, and John Doe Corrections Officers. In the Complaint, Plaintiff alleges he was physically assaulted by Officer Midrid after he was taken to the medical department for emergency treatment. He seeks monetary damages.

### BACKGROUND AND HISTORY

Plaintiff alleges that on Monday, November 5, 2012, at approximately 6:30 a.m., he became extremely nauseous, experienced severe chest pain and had difficulty breathing. An inmate in a neighboring cell notified the shift corrections officer who investigated the situation and sent out a major medical alert. Captain Green, several corrections officers and nurses responded to the call. Captain Green carried Plaintiff out of his cell, down the stairs and placed him in a wheelchair. Green then rushed him to the medical department where he was placed on an examination bed.

Plaintiff indicates that a short time later, Officer Midrid entered the room. He indicates Midrid became upset when he discovered that Plaintiff was the patient in distress, and using profanity, demanded that Plaintiff get up and leave. Midrid insisted there was nothing wrong with Plaintiff. He exited the room using additional profanity.

Midrid returned a few minutes later to find Plaintiff still lying on the bed. Plaintiff claims Midrid then physically assaulted him using his hands, fists, elbows, and forearms.[1] He states that the assault caused pain and swelling in his face and his nose, and caused bleeding to his lips. He indicates he also sustained injury to his neck and chest. He claims that while Midrid was assaulting him, Officers Danhoff, Reed, and John Doe entered the room and roughly assisted Midrid in handcuffing him. He contends he was thrown to the floor and then slammed into the wheelchair. He states Lieutenant Moye observed the officers handcuffing Plaintiff and did not intervene.

Plaintiff was taken to a suicide cell by Officer Danhoff.[2] He claims Danhoff called him a racially derogatory name and pushed the wheelchair into walls, and jerked it back and forth while Reed bumped and kicked at it. Plaintiff alleges the incident caused him to experience pain in his neck, head, body, legs, and knees. He states Danhoff dumped him on the floor of the suicide cell.

Plaintiff indicates he eventually was diagnosed with a heart condition. At some later date, he received a cardiac catheterization and received a pacemaker at the Ohio State University Hospital.

---

[1] In one of his grievances, Plaintiff states Midrid was assisted by a nurse in the assault. He does not mention the nurse in this pleading.

[2] Plaintiff's allegations at this point are somewhat inconsistent. He states in a grievance that he was actually placed inside an ambulance and was receiving supplemental oxygen when Ms. Burkin took him out of the ambulance and prevented him from being taken to the hospital. In the Complaint he does not mention that an ambulance was summoned, but instead states he was taken directly to a suicide cell.

Plaintiff states he filed an informal complaint against Midrid which was processed as a use of force review. Plaintiff filed several grievances with respect to the incident with Midrid, but he was told each time that the complaint was being processed as a use of force review. Plaintiff does not indicate the result of that investigation. He states that he received a security review which resulted in the lowering of his security classification. He was transferred to the Allen Correctional Institution.

### PLAINTIFF'S CAUSES OF ACTION

Plaintiff lists four basic claims for relief. First, he claims Midrid used excessive force against him in violation of the Eighth Amendment. Second, he asserts that Danhoff, Reed, and John Doe used excessive force against him when they handcuffed him and placed him in a wheelchair. Third, he claims Danhoff referred to him with racial epithets, and used excessive force by pushing his wheelchair into obstacles and dumping him on the floor of the suicide cell. Fourth, he asserts Sheldon, Factor, Parker, Green, Brown, Matthias, and Moye supervise Midrid and are aware or should have been aware of his violent tendencies and did not take appropriate actions to correct his misconduct.

### STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## ANALYSIS

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element

4

showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To state a viable claim under the Eighth Amendment, Plaintiff must first satisfy the objective component. This portion of the claim is contextual and responsive to "contemporary standards of decency." *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson*, 503 U.S. at 8-10.

In the excessive force context, society's expectations are different. *Id.* "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9. The extent of the injury in this context is not the governing inquiry. *Id.* If this were true, "the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today." *Id.*

That is not to say that every malicious touch by a corrections officer gives rise to a federal cause of action. *Id. See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")(overruled on other grounds). "[O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, [courts] must grant

5

them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002). The determining factor for an excessive force claim is not whether the use of force was absolutely necessary in hindsight, but "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

As an initial matter, Plaintiff alleges Midrid and Danhoff verbally abused him. Verbal abuse and offensive comments do not rise to the level of an Eighth Amendment violation. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

Plaintiff also alleges Midrid physically assaulted him when he did not vacate the medical department. He claims Midrid hit him with fists, elbows, and forearms causing injury to his face, nose and lips. These allegations state a plausible claim for use of excessive force.

Plaintiff alleges Reed, Danhoff, and John Doe assisted Midrid in handcuffing Plaintiff and moving him to the wheelchair. He states that they twisted, bent, and "snatched" his body with great force "causing even more trauma." (ECF No. 1 at 4). These allegations are more vague, as they easily could describe conduct performed in a good-faith effort to maintain or restore discipline in an attempt to handcuff Plaintiff. He also alleges he was thrown from the bed to the floor and slammed into the wheelchair. Although he does not specify which of the officers committed these acts, that allegation, if accepted as true and construed in a light most favorable to the Plaintiff, is adequate to state a claim that is plausible on its face against these Defendants.

Plaintiff, however, fails to state a claim for relief against Warden Sheldon, Deputy Warden Factor, Major Parker, Institutional Inspector Brown, Shift Captain Matthias, and Lieutenant Moye He claims these individuals supervise Midrid and knew or should have known of his violent tendencies.

*Respondeat superior* is not a proper basis for liability under § 1983. *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Supervisors cannot be held liable for the acts of their employees where the claims against them are based solely on their right to control employees, or their "simple awareness of employees' misconduct." *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421. Similarly, a supervisor cannot be held liable under § 1983 for the actions of his or her employees where the allegation of liability is based upon a mere failure to act, a mere right to control employees, or simple negligence in failing to recognize the potential for harm to occur or to prevent it from occurring. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). Rather, to sustain a viable claim against the supervisors, Plaintiff must allege facts suggesting they actively engaged in unconstitutional behavior. *Id.*

Sheldon, Factor, Parker, Matthias, and Moye were supervisors over Midrid, Reed, Danhoff, and John Doe. Brown, as the Institutional Inspector, addressed Plaintiff's formal grievances and informed him that the matter was being handled through a use of force investigation. In order for liability to attach to any of these supervisors, Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of their employee's actions. *Id.* Plaintiff must show that the supervisors somehow encouraged or actively participated in the actions of their employees. *Id.*; *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). There are no allegations in the Complaint suggesting that these Defendants took an active role in the situation or that they in any way encouraged the actions of Midrid, Reed, Danhoff, or John Doe. Plaintiff cannot claim they encouraged the actions of the corrections officers simply because they denied his grievances, or in this case told him the matter was being handled through a use of force investigation. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999) (where the defendants only action is the denial of administrative remedies, "[t]here is no

7

allegation that any of the[ ] defendants directly participated ... in the claimed ... acts...."); *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Absent an allegation of personal involvement, these Defendants cannot be held liable for injuries to the Plaintiff.

## CONCLUSION

For all the foregoing reasons, Plaintiff's claims against Sheldon, Factor, Parker, Brown, Green, Matthias, and Moye are dismissed pursuant to 28 U.S.C. § 1915(e). I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This action shall proceed solely on Plaintiff's excessive force claims against Midrid, Reed, Danhoff, and John Doe. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

[1] 28 U.S.C. § 1915(a)(3) provides, in pertinent part:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

8