# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Timothy Triplett,                                                                  Case No. 3:14CV819

          Plaintiff

          v.                                                                   **ORDER**

Edward Sheldon, Warden, et al.,

          Defendants

      This is a state prisoner's civil-rights case under 42 U.S.C. § 1983.

      Plaintiff Timothy Triplett is an inmate at the Toledo Correctional Institution. When he experienced a medical emergency in late 2012, prison staff took him to the medical ward. There, Triplett alleges, multiple correctional officers beat him for no reason, and doctors and nurses refused to treat his serious medical needs.

      Triplett then brought this suit alleging the defendants – various correctional officers and members of the prison's medical staff – either used excessive force, failed to protect him from a known risk of harm, and/or were deliberately indifferent to his serious medical needs. He also alleges that the defendants were negligent under Ohio law.

      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367(a).

      Pending is the defendants' motion under Fed. R. Civ. P 12(b)(6) to dismiss for failure to state a claim. For the following reasons, I grant the motion in part and deny it in part.

**Background**

At 6:30 a.m. on November 5, 2012, Triplett, who was fifty-two years old and "on chronic care," became nauseated, had severe chest pains, and felt dizzy. (Doc. 66 at ¶14). It became difficult and painful for him to breath, and Triplett thought he was going to pass out. (*Id.*). A correctional officer to whom Triplett relayed his complaints sounded a "Major Medical Alert." (*Id.* at ¶15).

Shift Captain Green, some correctional officers, and "medical staff" entered Triplett's cell, put him in a wheel chair, and brought him to the medical department. (*Id.* at ¶13).

One of two nurses in the examination room — either defendant Bertok or defendant Peterson — told Triplett "he would have to wait to see" the doctor, defendant Richard Pine. (*Id.* at ¶14). As Triplett described his symptoms for the nurses, defendant Benjamin Madrid, a correctional officer, entered the room and told Triplett there was nothing wrong with him. Madrid then left the room, shouting "Fuck that [m]other [f]ucker Triplett." (*Id.* at ¶15).

Nurses Bertok and Peterson then told Triplett to get up, sit in his wheel chair, and wait for the doctor, but Triplett said that "he could not sit up as he felt he would pass out[.]" (*Id.*). Madrid re-entered the room and told Triplett to get off the examination bed. When Triplett, who could not stand on his own, refused, Madrid "attacked Triplett [by] hitting him in his face, chest, and ribs using his hands, fist and elbows[.]" (*Id.* at ¶16).

Thereafter, three correctional officers — defendants Reed, Danhoff, and Caughorn — came into the room in response to a "signal 3" or "man down" alarm that Madrid had triggered. These defendants grabbed, twisted, and bent Triplett's arms and handcuffed him. (*Id.* at ¶18). "[T]he CO defendants individually and/or collectively violently threw [Triplett] to the floor and then slammed him into a wheel chair[.]" (*Id.*).

As Danhoff, Reed, and Caughorn took Triplett back to his cell, they "purposefully ran the wheel chair and Triplett into walls and jerked the wheel chair back and forth with great force." (*Id.* at ¶19). At least one of the officers hurled a racial slur at Triplett. (*Id.*). When the officers reached Triplett's cell, they "dumped Triplett on the cell floor on his face causing him to cough up blood." (*Id.* at ¶20).

Eventually "Triplett was evaluated by medical personnel and Dr. Pine," and prison staff called for an "E.M.T. ambulance." (*Id.* at ¶23). Paramedics determined that Triplett was experiencing "severe cardiac arrest complications" and wanted to transport him to an outside hospital. Nevertheless, defendant Burkin refused to let Triplett leave the prison. (*Id.* at ¶25). Within twenty-four hours, prison staff relented and transferred Triplett to the hospital at Ohio State University. (*Id.* at ¶¶27 28). Triplett underwent two cardiac surgeries and had a Pacemaker implanted. (*Id.* at ¶27).

After Triplett filed this suit, defendant Reed allegedly retaliated against him by "stalking" him and interfering with his ability to worship. (*Id.* at ¶30). Moreover, "Triplett has been accused of misconduct and had to defend himself via the appropriate [grievance] procedures," which resulted in a "not guilty" finding. (*Id.* at ¶31).

**Standard of Review**

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that

3

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Discussion**

Defendants argue that I should dismiss the complaint for three reasons.

First, defendants argue that, with the exception of the excessive-force claim against defendant Madrid, Triplett failed to exhaust his administrative remedies. Second, they contend that none of Triplett's claims is plausible under the *Iqbal/Twombly* standard. Third, the defense maintains that I lack personal jurisdiction over defendants Caughorn, Burkin, Bertok, and Peterson because Triplett has not served those defendants.

**A. Exhaustion**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA), requires that a state prisoner exhaust all available administrative remedies before filing a federal lawsuit challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 83 84 (2006).

**1. Inmate Grievances in Ohio Prisons**

The Ohio Department of Rehabilitation and Correction maintains a three-step process for inmate grievances. At the first step, the inmate makes an informal complaint to prison staff. Ohio Admin. Code § 5120 9 31(K)(1). If that does not resolve the matter, the inmate may file a formal grievance with the prison's "inspector of institutional services." Ohio Admin. Code § 5120 9 31(K)(2). Finally, if the inmate's complaint remains unresolved, he may file an appeal to the ODRC's Chief Inspector. Ohio Admin. Code § 5120 9 31(K)(3).

The PLRA does not require that a prisoner's grievances identify each defendant by name. But the statute requires prisoners to "complete the administrative process in accordance with the applicable procedural rules." *Woodford*, *supra*, 548 U.S. at 88.

As relevant here, Ohio law requires that prisoners provide specific information in the form of "dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved." Ohio Admin. Code § 5120 9 31(K). If the prisoner "does not know the identity of the personnel involved, a 'John/Jane Doe' complaint may be filed." *Id.* Still, such a grievance must be "specific as to dates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." *Id.*

Thus a plaintiff "generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011).

**2. Triplett's Grievances Did Not Name All Defendants**

The grievances attached to Triplett's complaint establish that he failed to exhaust his administrative remedies with respect to all defendants except Officer Madrid.

First, none of Triplett's grievance-related filings mentions defendants Bertok, Caughorn, Peterson, Pine, or Reed. (Doc. 1 1 at 1 15) (Triplett's first "Informal Complaint Resolution"); (Doc. 1 2 at 1 15) (Triplett's second "Informal Complaint Resolution"); (Doc. 1 3 at 1 4) (Triplett's "Notification of Grievance"); (Doc. 1 4 at 1 6) (Triplett's "Appeal to the Chief Inspector"). Nor did Triplett avail himself of the opportunity to file a "John Doe" or "Jane Doe" grievance.

5

Second, while Triplett complained about defendant Danhoff in one of his informal complaints (Doc. 1 2 at 8), Triplett did not mention Danhoff again – let alone the nature of Danhoff's involvement in the incident where correctional officers allegedly drove Triplett's wheelchair into the wall. He thus failed to present his claim against Danhoff at each level of the prison grievance system.

Third, Triplett omitted defendant Burkin and her alleged misconduct from his Notification of Grievance, the second step in the internal grievance procedure. (Doc. 1 3 at 1 4).

For these reasons, Triplett failed to exhaust his administrative remedies as to all defendants and as to all claims except his claim against Officer Madrid. *See Woodford*, *supra*, 548 U.S. at 88; *Hall*, *supra*, 443 F. App'x at 106; *see also Marshall v. Ohio Dep't of Rehab. & Corrs.*, 2017 WL 2210866, *2 (S.D. Ohio) (grievance that named only one defendant in the federal suit, and did not use the "John/Jane Doe" procedure available under the Ohio Administrative Code, did not exhaust administrative remedies against three other defendants in the federal suit).

### 3. First Amendment and Due Process Concerns

The grievance form that Triplett used to begin the administrative process did not explain that he needed to name all individuals involved in the incident or refer to them, if unknown, as John Does or Jane Does.

In light of that omission, I requested supplemental briefing on the question whether a dismissal for lack of exhaustion here would be consistent with Triplett's right to "due process of law, and, as well, consistent with [his] right to petition this court for a redress of grievances under the First Amendment." (Doc. 76 at 1).

Defendants argue that Triplett's lack of knowledge is irrelevant to the exhaustion inquiry. They point to Sixth Circuit decisions upholding dismissals for failure to exhaust over the plaintiff's objection that he was ignorant of the grievance system entirely or of one of its components.

Defendants also contend that Triplett's grievances cited Ohio Admin. Code § 5120-9-31, which describes the grievance process generally and the John Doe requirement specifically. Thus, defendants argue that Triplett cannot claim he was ignorant of the requirement that he name any unknown individuals as John or Jane Does.

On review of the case law discussed in the defendants' motion,[1] I agree with the defendants that an inmate's lack of knowledge about the John Doe requirement does not excuse him, on constitutional grounds, from complying with it.

As the Circuit held in *Napier v. Laurel Cnty.*, 636 F.3d 218, 221 n.2 (6th Cir. 2012), "[a] plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy."

To be sure, inmates like Triplett have a "fundamental constitutional right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 346 (1996). That right requires "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 351.

But "requiring that reasonable procedures be followed is not tantamount to barring claims from being presented, as is evident from the fact that the Supreme Court has enforced the PLRA's exhaustion requirement." *Mason v. Bridger*, 261 F. App'x 225, 230 (11th Cir. 2008) (citing *Woodford*, *supra*, 534 U.S. at 532). The Sixth Circuit has already concluded that the PLRA is "a constitutional measure enacted to reduce frivolous prison litigation," *Sarah v. Deshambo*, 67

---

[1] Triplett's opposition brief does not discuss this issue.

F. App'x 346, 347 (6th Cir. 2003), and the exhaustion requirement is a critical means of implementing that goal. *See also Bradfield v. Corr. Med. Servs.*, 2009 WL 514251, *4 (W.D. Mich.) ("It is well-established that the PLRA's exhaustion requirements are constitutional."); *Breckenridge v. Turner*, 2008 WL 3200667, *1 (S.D. Ohio) ("the United States Supreme Court has upheld the exhaustion requirement of the PLRA on more than one occasion").

Accordingly, neither the First Amendment nor the Due Process Clause precludes a dismissal here on exhaustion grounds.

### 4. Triplett's Remaining Arguments

Triplett, now represented by counsel, responds that he exhausted his remedies as to defendants Burkin, Bertok, and Peterson because one of his informal grievances referred to Madrid and the "medical staff." (Doc. 85 at 4) (citing Doc. 1 1 at 8).

However, this grievance does not comply with the Ohio Administrative Code because it fails to identify, whether by name or as a John Doe or Jane Doe, any of the defendants in the federal suit, other than Madrid.

Furthermore, the grievance was untimely under Ohio Admin. Code § 5120-9-31(K)(1), which requires that inmates file an informal grievance within fourteen days after the incident. Triplett filed this grievance on December 11, 2012 — thirty-six days after his encounter with the defendants. (In any event, it remains the case that Triplett did not name any defendants besides Madrid in his notification of grievance, the second step of the prison's grievance process.)

Triplett also argues that he exhausted his administrative remedies as to defendants Danhoff, Reed, and Caughorn because: 1) he filed an informal grievance on February 19, 2013, naming Danhoff as one of the officers who used excessive force; and 2) a separate "use of force"

8

investigation that the prison conducted later identified Danhoff, Reed, and Caughorn as participants in the events of November 5, 2012. (Doc. 85 at 5).

This argument fails.

First, the grievance was untimely. *See* Ohio Admin. Code § 5120-9-31(K)(1).

Second, "an investigation by a prison Use of Force Committee will not substitute for exhaustion through the prison's administrative grievance procedure." *Curry v. Scott*, 249 F.3d 493, 504 (6th Cir. 2001); *see also Franklin v. Nusbaum*, 2012 WL 7148203, *2 (N.D. Ohio) (same). Accordingly, that the use-of-force investigation identified several of the defendants whom Triplett wishes to sue does not excuse his failure to exhaust administrative remedies as to those defendants.

Finally, Triplett contends that he exhausted his administrative remedies as to defendants Burkin and Pine by filing a notification of grievance on May 3, 2013. (Doc. 87 at 4). There Triplett alleged, *inter alia*, that Pine and Burkin refused, sometime in April, 2013, to order a CAT scan to determine if "there was any head damage caused by the vicious assault & attack on me" on November 5, 2012. (Doc. 85 11 at 1).

This grievance is insufficient to show Triplett exhausted his administrative remedies.

Triplett's amended complaint brought a deliberate-indifference claim against Pine and Burkin based on their refusals, in November, 2012, to authorize Triplett to receive treatment at an outside hospital. (Doc. 66 at ¶¶25 27). There is no allegation in the complaint that these defendants denied Triplett a CAT scan at any time. Accordingly, a grievance related to a denial of a CAT several months after the alleged assault cannot serve to exhaust a deliberate-indifference claim based on the defendants' refusal in November, 2012, to send Triplett to an outside hospital.

Accordingly, I will dismiss, with prejudice, Triplett's claims against all defendants except Officer Madrid.

### B. Excessive-Force Claim Against Officer Madrid

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 7 (1992).

Triplett's allegations, accepted as true and viewed in the light most favorable to him, state a plausible excessive-force claim against Officer Madrid.

The complaint alleges that Triplett, while in the medical ward, refused several orders, from medical personnel and Officer Madrid himself, to get off an examination bed, get into his wheelchair, and wait to see a doctor. The reason for the refusal, however, was Triplett's inability to do so, given the medical emergency he was allegedly experiencing.

Officer Madrid responded, not with the minimal force necessary to prod along an ailing, fifty-two-year-old inmate (Doc. 66 at ¶14), but by "hitting [Triplett] in his face, chest, and ribs[.]" (*Id.* at ¶16). That Madrid verbally berated Triplett with curse words, and volunteered his own untutored and demonstrably false opinion of Triplett's condition ("there's nothing wrong with you"), tends to support a plausible inference that Madrid acted "maliciously and sadistically," and not in good faith to quell prison unrest.

### C. Triplett's Complaints about His Lawyer

Finally, Triplett has submitted two complaints about his current attorney.

In the first, Triplett complains that counsel should have included in the amended complaint more allegations about the events of November 5, 2012. Triplett also claims that counsel missed a scheduled visit with him at the prison.

In a second filing dated May 8, 2018, Triplett alleges that counsel has not communicated with him since August 22, 2017, and that he does not know the current status of the case. (Doc. 82 at 1). Triplett writes that he does not "want [his] cases to go in moot [*sic*] or to be held responsible for my cases being dismiss [*sic*]." (*Id.*). He asks me to clarify whether his attorney "is still representing Me." (*Id.*).

Given the substance of Triplett's second submission, plaintiff's counsel, if he has not already done so, is directed to send, within seven days of the date of this order, a copy of the following documents to Mr. Triplett:

- Doc. 76, order requesting supplemental briefing;
- Doc. 78, defendants' motion to dismiss;
- Doc. 85, plaintiff's opposition;
- Doc. 87, defendants' reply; and
- Doc. 88, this order.

Plaintiff's counsel must then, within seven days after sending the documents to Mr. Triplett, file a certification with the court indicating that he has complied with this order.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Defendants' motion to dismiss (Doc. 78) be, and the same hereby is, denied as to the excessive-force claim against defendant Madrid and granted, with prejudice, as to all other claims pending against all other defendants.

2. Plaintiff's counsel shall, within seven days of the date of this order, send to Mr. Triplett copies of the documents listed on page 11 of this order. Within seven days after sending the documents to Mr. Triplett, counsel must file a certification with the court indicating that he has complied with this order.

3. The clerk is directed to set this case for a telephonic status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Defendants' motion to dismiss (Doc. 78) be, and the same hereby is, denied as to the excessive-force claim against defendant Madrid and granted, with prejudice, as to all other claims pending against all other defendants.

2. Plaintiff's counsel shall, within seven days of the date of this order, send to Mr. Triplett copies of the documents listed on page 11 of this order. Within seven days after sending the documents to Mr. Triplett, counsel must file a certification with the court indicating that he has complied with this order.

3. The clerk is directed to set this case for a telephonic status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge